| | |
|---|---|
| JOHANNES T. MARTIN )<br>　Plaintiff )<br>　 )<br>　v. )<br>LIVING ESSENTIALS, LLC )<br>　Defendant ) | United States District Court<br>Northern District of Illinois<br><br>1:15-CV-01647<br>JUDGE JOHN J THARP, JR<br>MAGESTRATE JUDGE<br>GERALDINE SOAT BROWN |

**FILED**

MAR 25 2015

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**COMPLAINT**

AMENDED COMPLAINT

The jurisdiction of this court is invoked pursuant to 28 USC 1332.

My name is Ted Martin. I am the footbag world record holder ( commonly known as Hacky Sack ).

In the 5-hour ENERGY commercial titled: "The last five hours: bigfoot..." an actor says,

" I mastered origami while beating the record for Hacky Sack." With this statement, the actor assumes my identity as the record holder. This is a false representation of fact and as a result is a cause for action under section 43(a) of the Lanham Act and the IL Right of Publicity Act (765 ILCS 1075/). I have attached a highlighted copy of the IL Right of Publicity Act.

Living Essentials, LLC may not use my identity for commercial purposes without my written consent. The above statement is a clear violation of my right of publicity, but it gets worse. The actor then says, "How do I do all this? 5-hour ENERGY. Hours of energy now with no crash later."

Here the actor reaffirms the previous false representation that he is the record holder and then gives sole credit for my hard earned record to 5-hour ENERGY.

This commercial goes beyond the usual implied false endorsement in a Right of Publicity case. 5-hour ENERGY is marketed as a performance enhancing drug and thus calls into question the validity of my record. Living Essential, LLC promotes 5-hour Energy exclusively as a performance enhancer and deliberately wants the audience to hear loud and clear that the record for Hacky Sack was accomplished because of 5-hour ENERGY.

I have never used this product, never considered using this product, and do not endorse this product. I'm outraged that my identity and persona are being used in this manner to sell this dubious product. Except for a period of 50 days in 1997, I have been the record holder since 1988. I have never endorsed anything. Now Living Essentials, LLC has the record holder claiming that 5-hour ENERGY is the reason he was able to beat the record. Three U.S. states are now suing the makers of 5-hour ENERGY for deceptive and misleading advertising. Living Essentials, LLC is willfully violating Sec. 30. of the IL Right of Publicity Act.

The record for Hacky Sack is more my identity than my name. There are quite a few people with the same name as myself, but there is only one record for Hacky Sack that does not require a prerequisite qualifier like woman's, doubles, or timed. This is because Hacky Sack is defined as the little ball you kick around. People with even limited knowledge of the game know the record for Hacky Sack is the most consecutive kicks without a miss. This is commonly understood, like a course record in golf is the least number of strokes or winning a marathon is the fastest time. My record can be described in many different ways. I object to Living Essentials, LLC using my identity to market 5-hour ENERGY without my consent. To be the record holder requires a great deal of stamina and energy, as well as, extreme focus. Living Essentials, LLC associated my record with 5-hour ENERGY to generate revenue.

Hacky Sack has tremendous name recognition all over the world. As the record holder of a household name I have mass appeal. Hacky Sack is popular with people of all ages but is especially popular with children. Is it a coincidence that everything in this commercial has kid appeal? It has references to Einstein, origami, Hacky Sack, Bigfoot, swimming the English channel, and dogs. 5-hour ENERGY has "do not take if you are…under 12 years of age" on the product label despite the American Academy of Pediatrics (AAP) saying energy drinks "are never appropriate for children and adolescents." In a CBS news interview, 5-hour ENERGY CEO, Manoj Bhargava, was informed of this contradiction, Mr. Bhargava said he'd never heard of that before, but would be open to changing the label. This interview aired November 16, 2012 under the title " 5-hour Energy CEO stands by product's safety". He also claimed the company' advertisements do not target children. Well, his company had just aired the "Doctor's review" commercial and "The last five hours: bigfoot…" commercial was released soon after. I'm sure Living Essentials, LLC has another view, but a responsible company would avoid even the appearance of marketing to children. The label was not changed.

Since 2009, 5-hour ENERGY has been mentioned in numerous F.D.A. fillings, some of which involved death and other serious life-threatening injuries such as heart attacks and convulsions. This is relevant to this case because Living Essentials, LLC is using my identity to sell 5-hour ENERGY. I am very concerned that a young Hacky Sack player, there are millions of them, could be induced by this commercial to take 5-hour ENERGY in a large quantity (more is better) and end up being seriously injured or dying as a result. This could happen because the message in this commercial is that if you take 5-hour ENERGY you will be able to beat the record for Hacky Sack. I hope this has not happened already. This commercial has caused me considerable angst because of the potential harm to a child and the severe injury to the commercial interest in my reputation by being linked to this product.

I seek in relief,

(a) An injunction against any further distribution of this commercial
(b) Treble damages from loss of endorsement
(c) All profits derived from the unauthorized use of my identity
(d) Punitive damages for the willful violation of my rights and the resulting pain and suffering
(e) Court costs
(f) Any other relief that this court may deem just and proper

*Ted Mart*

359 Woodbridge

March 24, 2015

Des Plaines, IL 60016

#847 824-6528

F847 824-6533

## Illinois Compiled Statutes

**Information maintained by the Legislative Reference Bureau**
Updating the database of the Illinois Compiled Statutes (ILCS) is an ongoing process. Recent laws may not yet be included in the ILCS database, but they are found on this site as Public Acts soon after they become law. For information concerning the relationship between statutes and Public Acts, refer to the Guide.

Because the statute database is maintained primarily for legislative drafting purposes, statutory changes are sometimes included in the statute database before they take effect. If the source note at the end of a Section of the statutes includes a Public Act that has not yet taken effect, the version of the law that is currently in effect may have already been removed from the database and you should refer to that Public Act to see the changes made to the current law.

# PROPERTY
# (765 ILCS 1075/) Right of Publicity Act.

```
    (765 ILCS 1075/1)
    Sec. 1. Short title. This Act may be cited as the Right of
Publicity Act.
(Source: P.A. 90-747, eff. 1-1-99.)


    (765 ILCS 1075/5)
    Sec. 5. Definitions. As used in this Act:
    "Commercial purpose" means the public use or holding out
of an individual's identity (i) on or in connection with the
offering for sale or sale of a product, merchandise, goods, or
services; (ii) for purposes of advertising or promoting
products, merchandise, goods, or services; or (iii) for the
purpose of fundraising.
    "Identity" means any attribute of an individual that
serves to identify that individual to an ordinary, reasonable
viewer or listener, including but not limited to (i) name,
(ii) signature, (iii) photograph, (iv) image, (v) likeness, or
(vi) voice.
    "Individual" means a living or deceased natural person,
regardless of whether the identity of that individual has been
used for a commercial purpose during the individual's
lifetime.
    "Juristic person" means a partnership, trust, estate,
corporation, unincorporated association, or other organization
capable of suing and being sued in a court of law.
    "Name" means the actual name or other name by which an
individual is known that is intended to identify that
individual.
    "Person" means a natural or juristic person.
    "Work of Fine Art" means (i) a visual rendition including,
but not limited to, a painting, drawing, sculpture, mosaic,
videotape, or photograph; (ii) a work of calligraphy; (iii) a
work of graphic art including, but not limited to, an etching,
lithograph, serigraph, or offset print; (iv) a craft work in
materials including, but not limited to, clay, textile, fiber,
wood, metal, plastic, or glass; or (v) a work in mixed media
including, but not limited to, a collage, assemblage, or work
consisting of any combination of items (i) through (iv).
```

(Source: P.A. 90-747, eff. 1-1-99.)

(765 ILCS 1075/10)
Sec. 10. Recognition of right of publicity. The right to control and to choose whether and how to use an individual's identity for commercial purposes is recognized as each individual's right of publicity.
(Source: P.A. 90-747, eff. 1-1-99.)

(765 ILCS 1075/15)
Sec. 15. Transferability, descendability, and divisibility. The rights under this Act are property rights that are freely transferable in whole or in part to any person either by written transfer, including but not limited to wills and trusts, or by intestate succession only to an individual's spouse, parents, children, and grandchildren, except that the rights under this Act are not subject to levy or attachment and may not be the subject of a security interest. Nothing in this Section limits the ability of any party to levy, attach, or obtain a security interest in the proceeds of the rights under this Act or the proceeds of the exercise of those rights.
(Source: P.A. 90-747, eff. 1-1-99.)

(765 ILCS 1075/20)
Sec. 20. Enforcement of rights and remedies.
(a) The rights and remedies set forth in this Act may be exercised and enforced by:
  (1) an individual or his or her authorized representative;
  (2) a person to whom the recognized rights have been transferred by written transfer under Section 15 of this Act; or
  (3) after the death of an individual who has not transferred the recognized rights by written transfer under this Act, any person or persons who possesses an interest in those rights.
(b) Each person described in paragraph (3) of subsection (a) shall make a proportional accounting to, and shall act at all times in good faith with respect to, any other person in whom the rights being enforced have vested.
(Source: P.A. 90-747, eff. 1-1-99.)

(765 ILCS 1075/25)
Sec. 25. Termination of rights of deceased individual. The rights set forth in this Act terminate if:
(a) a deceased individual has not transferred his or her rights in writing under Section 15 of this Act; and
(b) the individual has no living spouse, parents, children, or grandchildren.
(Source: P.A. 90-747, eff. 1-1-99.)

(765 ILCS 1075/30)
Sec. 30. Limitations regarding use of an individual's identity.
(a) A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons specified in Section 20 of this Act or their

authorized representative.

(b) If an individual's death occurs after the effective date of this Act, a person may not use that individual's identity for commercial purposes for 50 years after the date of the individual's death without having obtained previous written consent from the appropriate person or persons specified in Section 20 of this Act.
(Source: P.A. 90-747, eff. 1-1-99.)

(765 ILCS 1075/35)
Sec. 35. Applicability.
(a) This Act applies to acts or events that take place after the effective date of this Act.
(b) This Act does not apply to the following:
(1) use of an individual's identity in an attempt to portray, describe, or impersonate that individual in a live performance, a single and original work of fine art, play, book, article, musical work, film, radio, television, or other audio, visual, or audio-visual work, provided that the performance, work, play, book, article, or film does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services;
(2) use of an individual's identity for non-commercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign;
(3) use of an individual's name in truthfully identifying the person as the author of a particular work or program or the performer in a particular performance;
(4) promotional materials, advertisements, or commercial announcements for a use described under paragraph (1), (2), or (3) of this subsection; or
(5) use of photographs, videotapes, and images by a person, firm, or corporation practicing the profession of photography ("professional photographer") to exhibit in or about the professional photographer's place of business or portfolio, specimens of the professional photographer's work, unless the exhibition is continued by the professional photographer after written notice objecting to the exhibition has been given by the individual portrayed.
(Source: P.A. 90-747, eff. 1-1-99.)

(765 ILCS 1075/40)
Sec. 40. Violations; monetary relief.
(a) A person who violates Section 30 of this Act may be liable for either of the following, whichever is greater:
(1) actual damages, profits derived from the unauthorized use, or both; or
(2) $1,000.
(b) Punitive damages may be awarded against a person found to have willfully violated Section 30 of this Act.
(Source: P.A. 90-747, eff. 1-1-99.)

(765 ILCS 1075/45)
Sec. 45. Establishment of profits. In establishing profits under paragraph (1) of subsection (a) of Section 40 of this Act:

    (a) the plaintiff is required to prove the damages or gross revenue attributable to the unauthorized use; and
    (b) the defendant is required to prove properly deductible expenses.
(Source: P.A. 90-747, eff. 1-1-99.)

    (765 ILCS 1075/50)
    Sec. 50. Injunctive relief. Upon a showing of cause as required by Article XI of the Code of Civil Procedure for the issuance of injunctive relief, the court may issue such temporary restraining orders, preliminary injunctions, and permanent injunctions as may be appropriate under this Act.
(Source: P.A. 90-747, eff. 1-1-99.)

    (765 ILCS 1075/55)
    Sec. 55. Attorney's fees; costs. The court may award to the prevailing party reasonable attorney's fees, costs, and expenses relating to an action under this Act.
(Source: P.A. 90-747, eff. 1-1-99.)

    (765 ILCS 1075/60)
    Sec. 60. Rights and remedies. The rights and remedies provided for in this Act are meant to supplant those available under the common law as of the effective date of this Act, but do not affect an individual's common law rights as they existed before the effective date of this Act. Except for the common law right of publicity, the rights and remedies provided under this Act are supplemental to any other rights and remedies provided by law including, but not limited to, the common law right of privacy.
(Source: P.A. 90-747, eff. 1-1-99.)

Top



AP photos

to get back in the game — and the Cardinals could use his help!

n dan s the score

"I was the fourth outfielder," Brian says, "which was very disappointing. Ozzie kept my spirits up. He told me, 'Never quit; never let anyone take your desire. If you let it bother you, it will only hurt you.' I learned so much from Ozzie."

The rest, Brian says, comes naturally to an

# 51,155 Hacky Sack kicks? Yup, you got that straight!

Playing Hacky Sack is a kick, right? You can probably knock that dinky footbag around a time or two or three before it hits the floor.

Not bad, champ. Now imagine kicking it 51,155 consecutive times. That's the world record for Hacky Sack, or footbag, kicks, set by Ted Martin, 37, of Des Plaines. He did it in 7 hours, 1 minute and 37 seconds in '93 and made the Guinness Book of World Records. How does he do it?

"I don't know sometimes," he says. "You get hypnotized by it. After a certain point, it becomes too easy. But then you lull yourself into a false sense of confidence."

So he tries to stay focused. "You listen to music sometimes, but you've just got to try to keep your concentration on the ball and don't get too relaxed. You can't be too tense either."

OK. Concentrate. Be relaxed. But don't be too relaxed. But don't get too tense. Got it.

Martin tries for 10,000 kicks a day. He also rides an exercise bike and runs on a treadmill. Sometimes he'll play hockey or basketball with buds. But, mainly, Hacky Sack is his bag.

—*Larry Mayer*

*Check out the Midwest Footbag Association's regional competition June 13-15 in Mt. Prospect. For info, call Scott Davidson at 773-237-9255. For more info on the sport, call the World Footbag Association at 800-878-8797.*





Tribune photo by Val Mazzenga
Stand back, it's Ted Martin the Hacky Sack champ.

179

### Ted Martin

Inducted into the Footbag Hall of Fame in 2005. Martin made an indelible mark on the sport in 1997 when he set the world record for consecutive kicks (no knees) with an amazing total of 63,326. The feat took over eight hours and 50 minutes. Photo courtesy of Worldfootbag.com.



### 2009 GOODWIN CHAMPIONS

©2009 UDC 925 Trade Drive, North Las Vegas, NV 89030. All rights reserved. Printed in the USA. RLNT3





- What Florida site attracted nearly half the world's shark attacks in 2001—Flagler Beach, New Smyrna Beach or Wabasso?
- What 1999 Keanu Reeves effort did *Shift* magazine anoint "geekdom's favorite movie"?
- What Briton's butler of nine years was accused by the royal family of stealing a bullwhip, ABBA CDs and a signed photo of David Hasselhoff?
- What jailed mobster saw his daughter skip the family business for a job at the *New York Post*?
- What's Los Alamos jargon for a nuclear test—a bang, a pop or a shot?
- What brand-name object did Ted Martin spend nine hours kicking a record 63,326 times without a miss, in 1997?

583



- GV — New Smyrna Beach
- SS — *The Matrix*
- NWS — Princess Diana's
- WW — John Gotti
- INV — A shot
- GT — A *Hacky Sack*

583