IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHANNES T. MARTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 15 C 01647 |
| ) | |
| LIVING ESSENTIALS, LLC, ) | Judge John J. Tharp, Jr. |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Oscar Wilde once observed: "It is a curious fact that people are never so trivial as when they take themselves seriously." Case in point: Plaintiff Johannes T. ("Ted") Martin claims invasion of privacy and false advertising based on a television commercial in which an actor plugging an energy drink claims to have accomplished a series of seemingly impossible feats, all within the five-hour boost of energy the product purports to provide. These include mastering origami "while beating the record for Hacky Sack." Am. Compl. 2, ECF No. 8. Martin, who holds the world record for most consecutive kicks (no knees) in the footbag (*i.e.* hacky sack) singles category and has held that record since 1988 (with the exception of a brief period of 50 days in 1997), takes umbrage at the suggestion that consuming an energy drink could enable someone to break a record—*his* record—that doubtless requires a great deal of athleticism and countless hours of practice. He sees no humor in what he perceives to be an effort to exploit his achievement. But, whether Martin himself finds it humorous or not, the ad is clearly a comedic farce and in no way trades on Martin's identity. Were he to take a step back, Martin might even see that, if anything, the ad promotes the game to which he has given so much of himself (including, perhaps, his sense of humor). In any event, the amended complaint asserts no

plausible cause of action and, for the reasons set forth more fully below, is dismissed with prejudice.

## BACKGROUND[1]

Martin brings claims against Defendant Living Essentials, LLC ("Living Essentials") under the Illinois Right to Publicity Act ("IRPA"), 765 ILCS 1075/1 et seq., and the Lanham Act, 15 U.S.C. § 1125(a). Currently before the Court is Living Essential's motion to dismiss the Amended Complaint in its entirety. ECF No. 10. At issue is a commercial for an energy drink called "5-hour ENERGY" ("5HE") in which an actor claims that "in the last 5 hours" he: disproved the theory of relativity; swam the English Channel and back; found Bigfoot; and mastered origami while beating "the record for Hacky Sack," all because he took a 5HE shot ("the Commercial").[2] Mem. in Supp. Ex. A, ECF No. 12. The specific portion of the Commercial that is at issue depicts a caucasian male actor kicking two hacky sacks while using his hands to construct an elaborate origami figure. *Id*. The Commercial also displays small-print text on the bottom of the screen stating, "For comedic purposes only. Not actual results[,]" and "Not proven to improve physical performance, dexterity or endurance." *Id*. Martin takes issue with the statement in the Commercial that the actor beat the record for hacky sack because he consumed

---

[1] For purposes of this motion to dismiss, the Court takes as true the following facts from Martin's Amended Complaint. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

[2] The language of the Commercial is taken from a video of the Commercial included with Living Essentials' motion to dismiss. Mem. in Supp. Ex. A, ECF No. 12. Documents (or in this case, a film clip) that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. *See Venture Assoc. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993). Thus, the Court will consider the entire 5HE Commercial as part of the pleadings in analyzing Living Essentials' motion to dismiss. Moreover, because the Lanham Act requires considering the alleged false statements in context, the Court will look to the entire Commercial as context. *See Schering–Plough Healthcare Prods. v. Schwarz Pharma, Inc.,* 586 F.3d 500, 513 (7th Cir. 2009).

5HE, asserting that the statement is a false representation of fact and that the actor assumed his identity as the hacky sack world record holder, in violation of the IRPA and the Lanham Act.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must state a "plausible claim for relief," and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief'" under Rule 8. *Iqbal.* at 679. Although a court must accept all of the plaintiff's factual allegations as true when reviewing the complaint, conclusory allegations merely restating the elements of a cause of action do not receive this presumption: "A complaint must allege facts to support a cause of action's basic elements; the plaintiff is required to do at least that much." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014).

### I.      Jurisdiction

Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). Martin pleaded in his Amended Complaint that, "The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332." Am. Compl. 2. While this statement alone is not sufficient to state the grounds for jurisdiction, Martin has adequately supplemented the jurisdictional statement in his response to the motion to dismiss, stating, "The Defendant is based in Michigan and I am a long term resident of the Northern District of Illinois. I seek damages in an amount exceeding $75,000." Resp. 15, ECF No. 15. Moreover, while Martin does not cite the statute, he correctly states that this Court has original jurisdiction over a Lanham Act case. Resp. 14; *see* 28 U.S.C. § 1331.

Thus, Martin has fulfilled the requirements of Fed. R. Civ. P. 8(a)(1), and this Court has jurisdiction over this case.

## II.     IRPA Claim

### A.     Statute of Limitations

While a statute of limitations defense is not normally part of a Rule 12(b)(6) motion, when the plaintiff's allegations reveal that his claim is barred by a relevant statute of limitations, the complaint may be dismissed for failure to state a claim. *Logan v. Wilkins,* 644 F.3d 577, 582 (7th Cir. 2011). IRPA claims are subject to a one-year statute of limitations, which begins to accrue at the time of the first publication of the allegedly infringing publication. *Blair v. Nevada Landing Partnership,* 859 N.E.2d 1188, 1192 (Ill. App. Ct. 2006) ("The Right of Publicity Act does not identify a specific statute of limitations. However, . . . we find applicable the one-year statute of limitations that pertained to the common-law tort [of appropriation of likeness].").[3] Martin's Amended Complaint references a CBS news piece about Living Essentials that aired November 16, 2012. Am. Compl. 3. Martin then states that "[Living Essentials] had just aired the

---

[3] Martin asserts that the general five-year statute of limitations applicable to "property" claims (*see* 735 ILCS 5/13-205) applies to claims under the Right of Privacy Act because the IRPA is codified in Chapter 765 of the Illinois Compiled Statutes, which is titled "Property." This argument ignores the fact that, prior to enactment of the IRPA, the one-year statute of limitation claim applicable to common law claims involving "publication of matter violating the right of privacy" included right-of-publicity, also known as appropriation-of-likeness, claims. *Blair,* 859 N.E.2d at 1192. The IRPA codified the common law right of publicity claim. *Id.* (IRPA sets forth "essentially the same three elements that were required for a common-law claim of appropriation of likeness"). Accordingly, in *Blair,* the Illinois Appellate Court expressly held that the same statutory limitations period that applied to the common law right-of-publication claim also applied to its statutory replacement. The Court is aware of no contrary authority and when applying or interpreting Illinois state law, the decisions of the intermediate appellate courts control "unless there are persuasive indications that the state supreme court would decide the issue differently." *Judson Atkinson Candlies, Inc. v. Kenray Assocs., Inc.,* 719 F.3d 635, 639-40 (7th Cir. 2013). There are no such indications here. *See also Berry v. Ford Modeling Agency,* 2012 WL 5470289, at *3 (N.D. Ill. Nov. 9, 2012) (expressly rejecting argument that five-year statute of limitations applies to IRPA claims and citing cases).

4

'Doctor's review' commercial and 'The last five hours: bigfoot . . . ' commercial [the Commercial] was released *soon after*." *Id.* (emphasis added). Martin filed his original Complaint on February 24, 2015. Compl., ECF No. 1. For Martin's Complaint to be timely under the statute of limitations, the first publication date of the allegedly infringing Commercial would have to have been on or after February 24, 2014. Since Martin's Amended Complaint states that the Commercial aired "soon after" November 16, 2012 (regardless of whether "soon after" means a few days, a few weeks, or even a few months), well over a year had passed since the date of the Commercial's first publication when Martin filed his Complaint. Martin's IRPA claim against Living Essentials is, therefore, dismissed as time-barred.[4]

### B. Use of Identity

Even if Martin's IRPA claim were not time-barred, it could not succeed. The IRPA protects the exploitation of one's identity for commercial purposes without consent. The premise of Martin's argument is that by claiming that the hacky sack record holder used 5HE to set the record, the Commercial effectively says that *Martin* used 5HE to set his record. Living Essentials points out that the Commercial never uses Martin's name, or likeness, or voice, but IRPA's scope extends to the unauthorized use of "any attribute of an individual." 765 ILCS 1075/5.

---

[4] There is an exception to the general rule for the initiation of the statute of limitations period when the tort at issue involves a continuing or repeated injury. *Blair,* 859 N.E.2d at 1192 ("Under the 'continuing violation rule,' where a tort involves a continuing or repeated injury the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease."). Where there is a single overt act from which subsequent damages may flow, however, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury. *Id.* (citing *Feltmeier v. Feltmeier,* 798 N.E.2d 75, 85 (Ill. 2003)). In *Blair,* the court held that although a picture of the plaintiff was used repeatedly over a period of time, it was used for the single purpose of advertising and therefore did not "denote a continuing course of conduct for which the limitations period can be tolled." *Blair,* 859 N.E.2d at 1193. Although Martin does not assert the "continuing violation rule," the Court notes that the repeated airing of the Commercial still constitutes a single overt act, such that the limitations period does not toll.

Martin contends that "the record for Hacky Sack" is a phrase that identifies him particularly, but the phrase is far too ambiguous to do so. The language and graphic of the Commercial depict vague generalities regarding "the record for Hacky Sack" and do not clearly indicate that someone has broken the specific record that Martin set (or any other particular hacky sack record). Living Essentials points to the diverse array of hacky sack records (at least 14 different records, Mem. in Supp. 8 n.7), arguing that Martin's assertion that he holds *the* record is a mischaracterization. *Id.* 7-8. The Commercial, moreover, depicts a man kicking two footbags, not one. *Id.* Ex. A. Whether "the record" the fictitious consumer of 5HE claims to have broken is open singles footbag consecutive (Martin's record), open singles timed footbag consecutive, footbag (consecutive eclipses), or footbag (consecutive diving butterflies) or any of the other ten footbag records listed as a Footbag Guinness World Record is not evident in the Commercial. *See id.* Ex. C.[5] Martin notes the many different types of footbag records in his response, admitting that there "are actually more consecutive records than listed" on the Guinness World Records website. Resp. 5. He focuses on the open five-minute timed record and the record for juggling two footbags with one foot, then discusses the detailed differences between these two records—the difference between "consecutive" records and "freestyle" records, the difference between "kicks" and "tricks" such as "touches" or "stalls," the difference between "kicks" and "strikes," and when knees can and cannot be used. *Id.* 5-6. In describing the wide array of records and the specific knowledge necessary to discern between the records, Martin effectively concedes the ambiguity of a reference to "the Hacky Sack record."

---

[5] The Court may take judicial notice of the contents of a website. *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 944 n.3 (7th Cir. 2010). Further, Martin does not dispute that the records reflected on the Guinness site are authentic. Indeed, he relies on the site as evidence of the authenticity of his own record. *See* Resp. 4-5.

But all of this misses the more fundamental point. The Commercial is a joke, a comedic farce. The claims it makes are not intended to be taken as true—and to the extent that there could be any doubt on that score, the commercial includes a clear disclaimer advising the most gullible among us that these are "not actual results." No one could watch the Commercial and reasonably conclude that the product spokesman actually holds "the record for Hacky Sack," much less that Ted Martin, who is listed in the Guinness Book of Records as holding just one of the many listed hacky sack records, is the person in (or portrayed by an actor in) the Commercial. Moreover, even if someone identified Martin as the holder of the record to which the Commercial refers, the Commercial portrays someone who not only set that hacky sack record, but also accomplished a series of additional equally improbable feats. If you didn't get the joke, and wanted to find out who this remarkable person is, you would also have to find out who had disproved relativity, and swum the English Channel, and found Big Foot, all in the same afternoon. Martin neither claims to have done these other things nor explains why anyone would believe that, in addition to unrivaled skill at keeping a footbag aloft, he possesses genius surpassing that of Einstein, twice the endurance of Diana Nyad, and hunting skills so refined that he is able to locate even mythical creatures. The Commercial's implication is to the contrary: whoever this remarkable human may be, he is someone other than Ted Martin (or Einstein, Nyad, or the biggest of big-game hunters, all of whom the Commercial portrays as being left in the wake of anyone who might consume a dose of 5HE).

To the maxim *de minimis non curat lex*, then, let us add a complementary proscription: *defectum humoris non curat lex*—the law does not reward humorlessness. Martin's premise that the Commercial exploits his identity because someone might believe that the actor (or whoever he portrays) actually broke Martin's record depends on an interpretation so blind to its comedic

7

nature that it is unreasonable and therefore beyond the law's protection. No reasonable person could conclude that the spokesman in the Commercial was actually Ted Martin, or even an actor playing Ted Martin. Accordingly, the Commercial does not use Martin's identity and his IRPA claim must be denied.

## III. Lanham Act Claim

Martin's false advertising claim under the Lanham Act fails for essentially the same reason: The Commercial is an obvious farce that would not lead anyone to believe that Martin, or anyone else, had actually accomplished all of the remarkable feats described. Even unsophisticated consumers would get the joke.[6]

---

[6] That the Commercial does not implicate Martin's identity also means that Martin is not even authorized to pursue a false advertising claim. In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), the Supreme Court held that "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id*. at 1390. As discussed further below, Martin asserts no such commercial interests. He is not a competitor of Living Essentials and is not otherwise involved in any commercial activity.

Although it has argued that Martin failed, as a matter of pleading, to adequately allege harm and therefore to state a claim, Living Essentials has not argued that Martin's claim does not fall within the Lanham Act's zone of interest. As the Supreme Court explained in *Lexmark,* notwithstanding that the question of whether a plaintiff is authorized to sue based on the scope of a statute's substantive and remedial purposes has often been referred to as prudential or statutory "standing," the question is non-jurisdictional and can therefore be waived. *Id*. at 1387 n.4 (question is non-jurisdictional); *American Institute of Certified Public Accountants v. Internal Revenue Service*, 804 F.3d 1193, 1193 (D.C. Cir. 2015) (because non-jurisdictional, the question can be waived). Having failed to assert this argument, Living Essentials has waived it.

Section 43(a) of the Lanham Act provides, in pertinent part that:

> Any person who, on or in connection with any goods or services . . . uses in commerce . . . any . . . false or misleading description of fact, or false or misleading representation of fact, which—
>
> . . .
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

In assessing false advertising claims under § 43 of the Lanham Act, it is often said that where a statement is literally false, a plaintiff need not show that the statement actually deceived consumers; evidence of consumer confusion is required only where the actionable statement is literally true or ambiguous. There is, in other words, a presumption of consumer confusion where statements are literally false; where they are not, evidence of confusion must be adduced. *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971-72 (7th Cir. 1999); *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996); *see also Merck Eprova AG v. Gnosis S.p.A*, 760 F.3d 247, 255 (2d Cir. 2014).

As the Seventh Circuit has explained, however, the doctrine of "literal falsity" does not actually require literal falsity: "'literal' must be understood in the common colloquial sense in which Americans (not realizing, or perhaps not caring, that they are making Fowler turn in his grave) say things like 'I am literally out of my mind.'" *Schering–Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 512–13 (7th Cir. 2009). Whether a statement is "literally" false or not, its actual meaning, and the risk that it may confuse consumers, depends

on context. *Id*. ("[T]he meaning of the alleged literal falsehood must be considered in context and with reference to the audience to which the statement is addressed").

Living Essentials maintains that the Commercial is not literally false because it is ambiguous as to which hacky sack record it referred. "[O]nly an *unambiguous* message can be literally false," it argues; "if the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." Mem. in Supp. 9 (quoting *Time Warner Cable, Inc.,* 497 F.3d at 158). In this case, however, the Commercial's ambiguity does not mean it is not literally false—the claim that a 5HE consumer broke *any* hacky sack record (while mastering origami, no less) *is* false. Here, there is no interpretation that renders the claim about breaking the hacky sack record truthful—the statement wasn't intended to be truthful because the Commercial is a farce. It is, in that sense, literally false.

That does not mean, however, that it is actionable without evidence of consumer confusion. "Many literally false statements are not deceptive." *Schering-Plough*, 586 F.3d at 512. Among them are statements of puffery and exaggeration so extreme that we can confidently say that no one could be fooled by them. *Id*. ("if no one is or could be fooled, no one is or could be hurt"). A leading authority on trademarks has defined puffery as "grossly exaggerated advertising claims such as blustering and boasting which no reasonable buyer would believe was true" and is therefore "not actionable under Lanham Act § 43(a)." 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27.38 (4th ed. 1997) (adding further that "silly and unbelievable print and television advertising falls into this category"). Indeed, if a representation "is so grossly exaggerated that no reasonable buyer would take it at face value, there is no danger of consumer deception and hence, no basis for a false advertising claim." *Time Warner Cable,* 497 F.3d at 159 (rejecting false advertising claim based on grossly exaggerated

10

depiction of cable television image quality). This is particularly so when such statements are made with disclaimers highlighting their intended farcical nature. *Faegre & Benson, LLP v. Purdy*, 367 F. Supp. 2d 1238, 1244 (D. Minn. 2005) (disclaimers on webpage "should alert the consumer that the web pages are parodies; thus, they are less likely to confuse consumers as to the sponsorship, affiliation, or source"); *Marriott Corp. v. Ramada Inc.,* 826 F. Supp. 726, 728 (S.D.N.Y.1993) (dismissing false advertising claim because ad was an obvious parody and one that no "reasonable person would be misled—even absent the disclaimer—into believing"). And here, there were two disclaimers removing any doubt that the Commercial was not to be taken literally.

As discussed above, the Commercial plainly falls into the category of farcical exaggerations that carry no risk of deceiving consumers. Martin is right when he says that Living Essentials "deliberately wants the audience to hear loud and clear that the record for Hacky Sack was accomplished because of 5-hour Energy," Am. Compl. 2 (capitalization altered), but that's the point of exaggeration. Telling consumers that they might cross one more item off their to-do list in the afternoon if they drink 5HE isn't necessarily a compelling or memorable sales pitch; consumers are much more likely to remember the claim that 5HE will enhance productivity if it is delivered in a more colorful and entertaining message. The entire gambit of the commercial is to make claims that are so patently impossible and exaggerated that they are comical and therefore memorable. Claiming that by taking 5HE, one can disprove the theory of relativity, master origami while beating "the record" for hacky sack, swim the English Channel and back, and find Bigfoot all within the span of five hours, is obviously exaggerated hyperbole—better described as farce than mere puffery—upon which no reasonable consumer would rely.

*Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510 (S.D.N.Y. 2009), provides an instructive example that also confirms the farcical nature of the Commercial. There, the court addressed a false advertising claim arising from an advertisement for Powerade that contained the slogan, "Upgrade your game." *Id* at 529. The court held that the advertisement was non-actionable puffery because it was "exaggerated and boastful, and no reasonable consumer, having read the slogan, would be justified in believing that it would actually result in improved athletic abilities, such as playing a better game of basketball." *Id.* at 530. So too here, where the boastful nature of the claim is the same but the message is delivered in a fashion that leaves no room for doubt that the literal claims being made are farcical.

Given the farcical nature of the Commercial, Martin cannot plausibly allege consumer confusion that has injured him, and he has not done so. He identifies no one who has been confused by the Commercial at all, much less in a way that harms his commercial interests. While Martin alleges that the Commercial has caused him "considerable angst," that he has suffered "severe injury to the commercial interest in [his] reputation," and that he seeks "treble damages from loss of endorsement," Am. Compl. 4, Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Further, Martin also states that, although he has held the record since 1988, he has "never endorsed anything." Am. Compl. 2. Martin fails to claim any endorsements or financial opportunities that he lost as a result of the Commercial, or to identify endorsement opportunities that have been extended to other hacky sack elites. In conceding that in the 24 years of holding "his record" between 1988 and 2012 that he had no endorsement deals, Martin has failed to prove any alleged harm as required under the Lanham Act. *See Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204-05 (7th Cir. 1990) ("A plaintiff wishing to recover

damages for a violation of the Lanham Act must prove . . . that the plaintiff suffered actual injury, *i.e.,* a loss of sales, profits, or present value (goodwill).").

If Martin's record has any commercial value—a dubious proposition given his admission that he has never endorsed anything—it would be among the Hacky Sack cognoscenti, but Martin does not claim that it is they who have been misled. Instead, he speculates in his Amended Complaint that "a young Hacky Sack player . . . *could be induced* by this commercial to take 5-hour ENERGY . . .," and "*hope[s]* this has not happened already." Am. Compl. 4 (emphasis added). Martin's concerns in this regard, though no doubt well-intentioned, fall short of providing a basis for his claim. Martin has no standing to assert claims on behalf of others who (according to Martin) may have been misled about the benefits of 5HE where Martin was not.[7] Martin, moreover, has merely speculated about the possibility of consumer confusion; he has not provided any facts showing consumer deception or confusion to support an allegation that the statement is misleading in context. *See Holland v. Lake Cty. Mun. Gov't*, 605 F. App'x 579, 580 (7th Cir. 2015) (plaintiff's claim "amounts to nothing more than speculation, which is insufficient to state a plausible claim for relief.").

\*   \*   \*

Because Martin's IRPA claim is time-barred and because he has failed to plead sufficient facts to support his claim under either the IRPA or the Lanham Act, Living Essentials' motion to dismiss is granted. And because repleading will not change the farcical nature of the Commercial, the dismissal is with prejudice. The Commercial is an obvious joke that employs

---

[7] Unlike the question of whether the Lanham Act affords a cause of action to injured consumers (the "zone of interests" issue addressed in *Lexmark,* which is a non-jurisdictional question), the issue of whether a plaintiff is seeking redress for an injury that he has not sustained but others have is a question of Article III standing, which requires an injury-in-fact that is traceable to the challenged conduct. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

hyperbole and exaggeration for comedic effect. Its claims could not deceive anyone with a modicum of common sense and wit. Mr. Martin (and the rest of us for that matter) would do well to remember: defectum humoris non curat lex.

Dated: February 1, 2016

John J. Tharp, Jr.
United States District Judge